GARNER ANTHONY *v.* HILO ELECTRIC
LIGHT COMPANY, LTD.

No. 4601.

June 13, 1968.

RICHARDSON, C.J., MIZUHA, MARUMOTO, LEVINSON,
JJ., AND CIRCUIT JUDGE LAURETA IN PLACE
OF ABE, J., DISQUALIFIED.

OPINION OF THE COURT BY MARUMOTO, J.

Plaintiff is owner of a residence in Kaupulehu, North Kona, Hawaii, a considerable distance above Mamalahoa Highway. Defendant is a public utility furnishing electricity on the island of Hawaii.

Plaintiff undertook the construction of his residence in October 1961. At that time, defendant had an existing electric pole line extending from the highway to a radio repeater station about two-thirds of the way to plaintiff's residence. Upon plaintiff undertaking the construction of his residence, defendant constructed a new pole line from the repeater station to the residence, and the telephone company installed its line from the highway to the residence by using defendant's pre-existing poles and the new poles.

Defendant constructed its new pole line under an agreement outlined in its letter of October 17, 1961, to plaintiff. In this letter, it estimated the cost of constructing the new line at $2,946, and agreed to contribute $1,860 toward this cost, leaving $1,086 to be paid by plaintiff to defendant upon the understanding that

one-fifth of this amount would be refunded in each of the first 5 years of service in which the revenue from the line exceeded one-fifth of the actual cost of the line.

Plaintiff made this payment of $1,086, and defendant credited the payment to an account designated as "Customer Advance for Construction." Thereafter, plaintiff wrote to defendant: "Could you please outline the steps necessary to have a telephone installed on the poles which your company will erect, assuming this can be done." In answer thereto, defendant wrote to the plaintiff on December 1:

> "In regard to the telephone line, we will submit our final pole line drawing to the Hawaiian Telephone Company for their approval and acceptance of a joint pole agreement. To expedite the matter, it would be advisable for you to apply for a phone so that when our request is sent to them, they would be aware of the situation.
>
> "When the joint pole agreement is accepted and paid by the Hawaiian Telephone Company, we will refund you the amount paid to us by the Telephone Company."

Upon receipt of defendant's letter, plaintiff contacted the telephone company to obtain information on the cost of installing the telephone line by using defendant's poles. The telephone company informed plaintiff that such installation would cost $3,660, for it would have to pay about $2,252 to defendant for the use of the poles. Plaintiff then inquired of defendant whether the amount to be paid by the telephone company for the use of the poles would be refunded to him. Defendant told plaintiff that the refund would be made in accordance with its agreement with him. Assuming that this meant that defendant would pay over to him the entire amount of the telephone company's payment for the use of the poles, plaintiff paid $3,660 to the telephone company, without exploring any cheaper means of obtaining telephone service to his residence.

The actual cost of constructing the new pole line was $4,382.80. But defendant did not inform plaintiff about this cost until the trial of this case, more than four years after the completion of

construction. The trial court held that, because of this delay, defendant was estopped from claiming that the actual cost of construction exceeded the estimated sum of $2,946. Defendant has not appealed this holding, and, consequently, on this appeal, which is an appeal by plaintiff, the sum of $2,946 will be considered the actual cost of constructing the new line. One fifth of this sum is $589.20. During the first year of service on the line, the revenue from the line was less than this figure, being $294.80. In each of the second and third years of service on the line, the revenue from the line exceeded $589.20, being $743.53 and $883.51, respectively. Thus, under defendant's letter of October 17, 1961, plaintiff was entitled to a refund from defendant of one-fifth of $1,086, or $217.20, in each of the second and third years of service on the line.

In connection with the installation of telephone service to plaintiff's residence, the telephone company paid to defendant the sum of $2,012.98, for the use of the poles. This payment was for the use of 35 poles along a route stretching from the highway to plaintiff's residence, of which 24 poles between the highway and the repeater station had been in existence before the construction of the pole line between the repeater station and plaintiff's residence. Defendant treated this payment as capital reimbursement and not as revenue from the pole line. It allocated $815.20 of this payment as "the Telephone Company joint pole share of the distribution line" constructed under its October 17 agreement with plaintiff.

It is plaintiff's position that it has two agreements with defendant, one of which is for refund of his $1,086 advance for construction out of revenue from the line in accordance with the formula outlined in defendant's October 17 letter, and the other being for payment over to him of the entire amount of telephone company's payment for the use of the poles under the statement in defendant's letter of December 1 that it would refund to him the amount paid to it by the telephone company. Accordingly, when plaintiff was informed that the telephone company paid $2,012.98 to defendant, he wrote to defendant that such sum be paid over to him.

Defendant's position, on the other hand, is that the agreement outlined in its letter of October 17 is the only agreement it has with plaintiff, and that the statement in its letter of December 1 regarding refund of the telephone company's payment is no more than a clarifying statement that the payment made by the telephone company for the use of the poles between the repeater station and plaintiff's residence will be paid over to plaintiff as part of the refund of his $1,086 advance for construction. Accordingly, it tendered a check of $815.20 to plaintiff.

Plaintiff rejected defendant's tender and brought this action against defendant to recover the entire amount of the telephone company's payment of $2,012.98. The circuit court sustained defendant's position, and entered a judgment for plaintiff only in the sum of $270.80, being the difference between $1,086 and $815.20, the amount of defendant's tender.

This case is before this court on plaintiff's appeal from the judgment. Under the judgment, plaintiff is precluded from recovering any sum over and above $270.80, as refund of his advance for construction out of revenue from the line.

We agree with plaintiff that he has two agreements with defendant. Defendant's letter of December 1 created an agreement with plaintiff. It induced plaintiff to make a payment for telephone line which he might not have made otherwise. *Restatement of Contracts*, § 90 (1932). The agreement is separate and apart from the agreement outlined in defendant's October 17 letter to plaintiff. Defendant's principal witness at the trial testified that the tender of $815.20 was not made under the refund provision of defendant's October 17 letter to plaintiff. The testimony was as follows:

"Q. * * * I take it that you were, in reimbursing him that money, were not complying with the first paragraph on the second sheet of your letter of October 17, 1961; is that not correct?

"A. This refund of $815.20 for the joint pole share is not for the revenue.

"Q. That is right. So it had nothing to do with your letter of October 17th; is that not correct?

"A. Correct."

However, we think that the refund mentioned in defendant's December 1 letter to plaintiff does not mean refund of the entire amount paid by the telephone company to defendant but is limited to refund of the payment made for the use of the poles between the repeater station and plaintiff's residence. Defendant's statement about the refund was made in answer to plaintiff's inquiry about the installation of a telephone line "on the poles which your company will erect." The rule of construction applicable to a situation such as this is stated in *Restatement of Contracts*, § 235 (c)(1932), as follows: "A writing is interpreted as a whole and all writings forming a part of the same transaction are interpreted together."

We hold that plaintiff is entitled to refund of his advance for construction in accordance with the terms set forth in defendant's October 17 letter, without regard to any refund made under defendant's December 1 letter, and that under defendant's December 1 letter, he is entitled to have the sum of $815.20 paid over by defendant, which sum shall be in addition to the refund of his advance for construction under defendant's October 17 letter.

Reversed and remanded with instruction to enter judgment in accordance with this opinion.

*Arthur B. Reinwald* (*Robertson, Castle & Anthony* of counsel) for appellant.

*Curtis W. Carlsmith* (*Robert E. Bethea* on the brief, *Carlsmith, Carlsmith, Wichman & Case* of counsel) for appellee.